72146 Jan C. Torres-Pagan v. Nancy Berryhill Thank you. Mr. Ramos, good morning. I think so. Well, don't believe that I will, so. Thank you. Good morning. Good morning. My name is Iván Ramos. I represent Plaintiff Appellant Jan C. Torres-Pagan. This case deals with the question of whether the ALJ properly developed the record in order to provide the claimant with a fair hearing. I just have one quick one before you get started. Have you seen Mr. Torres-Pagan's math work? No, Your Honor. So how do you know that those records have anything of relevance? Because there is information on file provided by the claimant where he states where he received this evidence, some of the medical conditions which include the fact that he has home visits, the fact that he has alleged that he has suicidal ideation, that he suffers from a sleep disorder, that he suffers from anxiety. Furthermore, I rely on the case law of the circuit, particularly the case law, for example, of cases like Hagerty v. Sullivan and Du Bois v. Secretary of Health and Human Services, where it says that the ALJ has a duty to explore. Specifically, Hagerty uses that term. And later on in Du Bois, there is substantial information there that tells us that records, that ALJ has a duty to investigate and inquire. Now, that duty is sustained by this circuit regardless of whether there is a finding that that evidence will sway the disability determination one way or another. When those cases are read... I don't understand how you can establish prejudice if you don't know what the records say. It's not as if the ALJ didn't have evidence before. I know you don't like the consultant's reports, but you don't know if there is anything in the medical records that would even rebut what they found. Because in a social security disability case, the ALJ has a duty. In this case, I did not represent the claimant, neither at the initial point in the administrative process or during the period when the appeals council was reviewing this matter. The evidence of whether a claimant who suffers from a mental health condition is not of the same nature of the evidence that involves other disabilities, like, for example, an orthopedic condition that has a very clear cut, let's say, restriction with respect to lifting. An orthopedic condition, a medical opinion, can say that a person can lift more than 20 pounds. However, in the case of a medical record involving a psychiatric illness, the ALJ has to go further and deeper into matters that are very subjective at times and need to be developed further. As is the case with Mr. Tolbert's case and with the four cases that I cited decided by this court. You're saying we can infer the prejudice from the nature of the representations you made about the records, the types of disabilities those records concern? That is correct, Your Honor. What have you represented to us about those records? What do we know about the records? You haven't seen them, but what does the records show about those records and how much of that was known to the ALJ at the time the ALJ made the decision? Yes, I go through great lengths in my briefs to this court and this court to explain that there are medications being administered, that the claimant explained what the treatment was. He was receiving home visits. He also explains that he suffers from suicidal ideation or suicidality. In his own words, this claimant also happens to have an intellectual disability, which at one time led him to meet the listing level, what used to be called mental retardation. You're saying to the ALJ that there would have been records there and all of that? All of that, and then also he explained at great length in his own words, which is a very simple man, that he suffers from a sleep disorder that keeps him asleep all night and he's receiving medication for that. I believe I talked about bipolar disorder and his mood swings. Prior to the first hearing, at least according to the government, there was no treatment for the year prior to his hearing. So if the ALJ had sought records according to them that existed, which is what I'm trying to figure out, what did you see that might contradict what they're saying? Your Honor, no, that is not correct. This is what happens. When they did the redetermination process, it is true that there were no medical records. When the agency did the redetermination process, once he asked for a hearing before the ALJ, medical treatment was going on without a psychiatric, with home visits. He said that. So a year before the redetermination, he was functioning, I assume, well enough, and he didn't need treatment. Well, Your Honor, this is a young man who dropped out of school. I cannot say that he was functioning well enough. I will refer the case to a similar circumstance as in one of the cases that I cited in my brief. When was he getting home visits? For a psychiatric, for mental health treatment. For the year prior to the redetermination. Prior to the hearing. Prior to the redetermination, let's see. No, there was no medical record prior to the redetermination. The medical treatment began the time between the redetermination and the time when the ALJ holds the hearing. All right. So only after the first denial did he seek treatment. Yes, that is correct. There is no question that he sought treatment after the first denial. He had received treatment before and he had been found disabled before. When was the ALJ being asked to decide whether the first denial was appropriate? The ALJ made a decision through the entire period of disability that goes up to the date when he makes a decision. And I will quote the decision, which says that he found him to be, that a claim of disability ended on July 3rd, 2013, which is the day of the redetermination, and the claimant has not become disabled again since that date. That is what the ALJ said. The ALJ may have said that, but is that relevant? Did the ALJ need to reach that issue for the purpose of determining whether the denial was appropriate? Yes. The ALJ has to consider all issues up to the day of the hearing. That is why he made that finding. Because everything has to be considered up to the day of the hearing. All the medical records have to be updated. Which, by the way, is what happens in Hungary. The claimant shows up to the hearing with the ALJ and informs me that there is a doctor called Dr. Bixby who is treating him for eczema. And the ALJ says, oh, well, maybe we should get those records. We should get those records. And then this court held that the ALJ apparently forgot to do that, or neglected to do that even though it was informed that he was just getting that additional treatment prior to the hearing, just prior to the hearing. This court held that the ALJ had a duty to explore that issue regarding the eczema and include those records, and he did not, to see if the eczema would rather have been disabled. It didn't make any findings. This court didn't make any findings or any requirements that that record regarding eczema had to be somehow outcome determinative or show a possibility that he could be found disabled. Now, likewise in this case, I may go through great lengths. But wasn't part of that court's decision promised on the fact that the ALJ promised to do that and didn't follow through? And that's not true here. Yes, Your Honor. Yes, it is true. It's a little bit different, but it's very similar in the sense that then the Social Security Administration, pursuant to the forms that they always have, they contact the claimant with this claimant was a representative. And I quote those forms in the district court in here where they say, please tell us if you are receiving medical treatment and what for and why, and we will get them for the hearing. And that's it. He completes those forms in his own handwriting and his own misspellings, which you can read as part of the record. And I quote, he said he's going to Dallas Psychiatric. He says, Mom, I didn't do well enough to provide the address, the telephone, the medications he's getting and why he's getting them. So it is not identical to Gregory that the ALJ had that conversation, but it's very similar in the sense that there were those, that opportunity, the agency did it, and it's better in the sense that we're doing it in writing, and he expressed that in his, with an accurate address for Dallas Psychiatric, and the ALJ didn't do this, and the agency didn't do this. And for that reason, they have, I believe, under the case law of the circuit, the duty to get those records and inquire. The ALJ came to say, no, you disregard bipolar disorder and disregard all the other medical conditions without those records. It is as if he didn't even have, and I said it many times, I said to a district court, and I say here, it is as if, this is so basic to me, that it is as if a claimant does not have a disability hearing and no medical records from treating sources are admitted. That is unheard of. That, as a matter of, that is something that I understand is concerned. What if those records are de minimis or insignificant? I understand those concerns, but here there are no records at all. So this ALJ just went ahead and made a decision, I think, against the duty that is firmly held by this court, which is heightened when a person goes unrepresented, and when a person suffers from a mental condition that impairs them. Now, we know that this claimant had a listing-level disability and rendered him intellectually disabled, and somehow his IQ scores also became a lot better, about 20 points, and we do not, I think we need to fill in the gaps, and the agency needs to explain how that could have happened. I know he argued, on this account, the ALJ was made aware that there were these other records because there was other treatment. Did he make an argument to the ALJ that those records would show him to be disabled? He, the record is the record of a person who is representing himself, who basically he says, he repeats himself, I'm getting medication, I'm getting, it's inaudible in many parts, the mom only speaks in Spanish, but I quote from the record where they're trying to say we get treatment, we're getting, the doctor is telling me that I have bipolarity, and that's why I don't sleep, so there's quite a bit of a conversation going on. What was his argument to the ALJ as to why he was disabled, what did he say that was, what caused him to be in a position where he couldn't do the work, according to him? Well, I mean, from what I can ascertain, he basically says he can't sleep, he says he suffers from bipolarity, he says that, He doesn't say that, he says he has headaches and he has no sleep when he's in the sun, and he specifically asked if there were, if he could do these jobs as cashier, Right, right, janitorial jobs, and he said for $50 an hour, of course I can. For $50 an hour? $50 an hour, of course. Well, I mean, that is true, there's a part of the hearing where this, we're dealing with an underrepresented claimant with a low IQ, whose core is this, why can't you work? He can't work. Why can't you work, you repeat? Because people are low IQ, I mean, my supermarket is filled with people with Down syndrome, and they're doing just fine. Okay, okay. But then, towards the end of the hearing, the claimant starts explaining. He said, when he first, the ALJ first asked the question, why can't you work for $50 an hour, which by the way, it's almost, at the time, it's almost double the minimum wage in Massachusetts. But anyways, towards the end, then the claimant starts explaining all the conditions that he suffers, the anxiety that he suffers, the lack of sleep that he suffers from, that he's getting treatment. A lot of the parts of the record are inaudible and are hard to explain what's going on. So it's not, I don't understand that the argument has been made that, based on some of his testimony, he almost conceded, the claimant almost conceded, like, oh, gee, I guess the judge is putting me on the spot, I guess. He said, oh, okay, yeah, maybe I can work. But then at the end, he comes back and explains why he has other conditions. And none of those issues were explored by the ALJ. And I think the word explore is clearly out of heredity. And also, there's substantial information on all his line of cases where there has to be an inquiry by the ALJ. If I look at the record, am I going to find a place in that hearing where he identifies any of the conditions that are related to the medical records that you say should have been explored? Where he identifies those conditions as the reason why he cannot do the work? I think it's either, I think there is an implication when he tells, I think there's an implication. Obviously, again, one has to read the record, and it can be read, I think, by someone who's just nervous and just explaining all the conditions that they have. I don't think we're dealing with a medical vocational issue that is not really his job or is within his realm to explain it. I think the ALJ then has to take it and really explore it. And like the decision that DeBlois explains actually imposes on the ALJ. In Hagerty, she said that when she raised the eczema, she was identifying the eczema as the reason why she was disabled. No, I'm sorry, Your Honor. That case dealt with a number of medical conditions. There was gout. There were a number of other issues. And that was kind of one of the ALJ's. She identified. She identified as a condition. I don't know that. I think the court essentially said, well, this could have an addition. Because the finding of disability is almost as impossible. So each different impairment can impose a different limitation. And then when all those limitations are added up, it might render either finding a disabled or not disabled. So just like not being able to sleep, having a mood swing, all those things have to put in the residual functional capacity that was then given in the hypotheticals. Thank you. Is there some reason you haven't looked at these records or you could at least make a proffer to us as to what they might suggest? Your Honor, I very, very strongly believe that the idea of creating a proffer is really contrary to the purview of the ALJ is to make that determination of disability, in particular the disability case involving mental illness. So essentially the court would be doing something that they never have done in its previous cases decided by the First Circuit, which is to invade the purview of the ALJ and sort of say, well, yes, these things have a bearing. These things are kind of important. I think more important than anything, and I urge this court to do, is to protect the disability determination process, particularly at the ALJ hearing, where these things are constantly happening without the availability of counsel with individuals who are some of the most vulnerable individuals in our society. I think that is of utmost importance. And to basically make a claimant, which is very unusual, get to this stage and make a proffer after the ALJ has summarily, essentially summarily dismissed the case, is not the best. It is not what the regulations call for and is not the correct administration of the disability determination process set forth by this court. But the ALJ didn't summarily dismiss the case. The ALJ relied on evidence that you don't like. The ALJ relied only on evidence. None of that I don't like. Only on evidence of agency consultants, exclusively of agency consultants, which is problematic because we know from the record itself that there is a contradictory evaluation from the same psychologist, which was not even included, which is 20 points. The agency has the duty to provide those records. They are not part of the record. If I find that Dr. Morales, who did another IQ test, which was 20 points lower, if I find that test, the district court cannot introduce that into evidence at the hearing. All they can do is decide whether, the same thing that this court is here being asked to do, decide whether there's a remand or not. You can't pass this for a remand in the district court if there's additional evidence that needs to be considered. New and material evidence. This is not new and material evidence, Your Honor. The case of new and material evidence was discussed in the evangelista. That is when, time after the AGL hearing, someone creates a new record or a new medical opinion. These are new medical opinions. These are new records. These are records that are old that should have been used in the determination process. Let me follow on this. I take your point that what's in the records, you say, doesn't determine whether there was prejudicial action by the AGL in making a disability determination without looking at them. Something's got to trigger the ALJ to look at them. So, presumably, if the claimant says, I'm disabled because I have a learning disability, that's the only reason I'm disabled. Yes, I was also treated for these other things, but they don't affect my disability. You would concede that the ALJ doesn't err by not looking at those records, right? No, Your Honor. You should. The agency... Your Honor, it sounds weird to many lawyers... Just because you're older, but your case is stronger than that, potentially. Because I thought you were suggesting to us that we could read the record to suggest that the claimant here was saying, my headaches, my lack of sleep, etc., are part of why I'm disabled, and that we should read the record favorably to him to suggest that the records he identified about suicide, and the issue, etc., go to those very symptoms, such that the ALJ was on notice and should have looked at the record. Yes, Your Honor, and I maintain that there's enough information that he provided here, yes. But I want to remind the Court of something that is very weird to all of us who are lawyers practicing attorneys. This is a non-adversarial process, and it is very obscure in the sense that there aren't many examples in the American legal system where this system is employed. The regulations over and over and over insist on the duty that ALJ doesn't sit at the hearing as an adjudicator that decides if the claimant doesn't raise an issue, that's it. That is not the case in this particular unique system. And that's why I quoted Justice Thomas to try to enlighten the Court. He has to look at both sides, and even raise issues that maybe this claimant has forgotten or neglected to do, which is likely something that would happen with Mr. Torres-McGann. So that's why I'm insisting on that point, because as civil security lawyers who do this 24-7 and the volume is very high, I can represent to the Court that all ALJs are out there asking if there's anything else, and before the record is closed, and no record is closed at this point in this manner. This is highly, highly unusual. When the mother brought me this file in the electronic form, I basically said, like, this is an electronic mistake. All the records were cut off. That's what happened, and it turned out that that was it, that there was nothing else. This was worse than the skimpy record referred to in the case of Currier, where the Court had a problem with some skimpy record from the agency regarding psychotic. This is a nonexistent record that I submit to the Court, because without any information from treating sources, I maintain it's as if he never had a right to a hearing. Thank you. Thank you, Your Honor. Mr. George, good morning. Good morning, Your Honor. May it please the Court, my name is Louis George. I'm representing the Acting Commissioner of Social Security, and the Court should affirm the Commissioner's decision finding that Mr. Torres-Bagani was no longer disabled effective July 3rd, 2013, following his 18th birthday. Now, this is a redetermination case. In this case, Mr. Torres-Bagani hasn't demonstrated, first of all, that there was any error that was made by the ALJ in the administrative proceedings in the case. I'm sorry to have to interrupt you, but I would like to know why the administrative judge did not look for those records. Well, in terms of why the ALJ didn't look for the records, it does seem there's some indication, if you look at the way that the... Did he have a duty to look at these records? Under the First Circuit case law, we argue that there was not, that he did not have an obligation, because in this case there was not a gap, there was not a gap to be filled in the case. Nor is this claim to be substantial. Wasn't there evidence that he was getting treatment elsewhere also? Pardon? Doesn't the record show that he was getting treatment by somebody else whose records were not before the ALJ? Yes, Your Honor. There was an indication that he was receiving treatment from Valley Psychiatric, and that was... Isn't that enough to trigger his duty to seek those records? No, Your Honor, it isn't. Just because there is evidence, in terms of the commissioner's obligation to develop the record, and the commissioner's regulations are 20 CFR 416.912, which deal with the 12-month period prior to the date of claim. And in this case, Mr. Torres-Pagan, during his consultative examination that took place just a mere week prior to the redetermination, indicated that he was not receiving any treatment. But what about the point that your opponent makes, that in the run-up to the hearing, there was evidence at that point that he was getting treatment. Is that relevant? Yes, Your Honor, it's relevant to a point. But because the mere fact that an individual is receiving treatment, is receiving treatment for, or even has been diagnosed... So let me just ask it this way. Yes. Suppose, like, at the hearing, or in the run-up to the hearing, he informs the ALJ, look, I wasn't getting the treatment in the one month, one year before the redetermination decision. But for the last two months, I have been getting intensive psychiatric treatment, and the psychiatric conditions I have that's being treated is why I'm disabled. Would the ALJ then have a duty to look at the record? In that case, with the fact pattern you state, I think there is potentially a greater obligation to search for those records. And it would not be incumbent on the claimant at that point to proffer the content of the records in order to demonstrate that the ALJ's decision that there's no disability has to be vacated if the ALJ simply said, I'm not looking at those records. But it depends also as well on... Is that right, though? Is that right? I'm sorry, Your Honor, could you... Yes. If in the lead-up to the hearing, the claimant said, I've been before, but the last couple of months I've been under intensive psychiatric treatment, and you can find the records in Valley Hospital, and that's why I'm disabled. If the ALJ said, well, I'm not going to look at those records, I'm just going to consult with my consultant. If the ALJ then said you're not disabled, the claimant wins without having made a proffer about the content of the records, right? I would say, Your Honor, not with respect to... Once we're at the court level, because at the court level there's still an obligation under our second argument, even if there was an error by the ALJ... You would then have to make a proffer to the district court? You would make it some indication of what those records show, either a proffer to the district court... They show that he's been treated for the psychiatric condition that he contended that he was. And I'm not trying to give you the records. I'm just saying he was treated at Valley Hospital for these psychiatric conditions. That's what the representation is. It would depend upon what exactly... If he indicated that he was told he was unable to work because of this treatment that he... That's what I'm asking. Does he have to make that proffer? It's not enough to say he was being treated for schizophrenia? It's not enough, Your Honor, that he was actually being treated, just because even in terms of this court's case law, even a diagnosis of a mental condition or even the fact that one is receiving treatment is not necessarily dispositive of disability. So the ALJ can basically just blow off the representation that I'm being treated for these things on the expectation that this person won't pursue it all the way to the district court to challenge the ALJ? That seems like an odd position for the agency to take. If there's a duty to inquire, why wouldn't the agency take the position that in that circumstance the ALJ should go ahead and get the records? Well, Your Honor, again, it depends on the circumstances of the case. I understand that. I just want to get through what the law is in the case that's much easier for the claimant here. And I recognize this case might be different. Let's do it this way. Yes. How is this case different than what I posited? This case is different because in this case we have a consultative examination that was done very close in time to the disability determination in which the claimant was found that his IQ level had gone up, that he had average reading skills. Had he represented that he was undergoing psychiatric treatment? He did not. He actually indicated that he had previously undergone some treatment that can down mental health for one to two years prior to the consultative exam in June of 2013. In any event, prior to the hearing, didn't he represent that in the months before the hearing he was getting psychiatric treatment? Yes, Your Honor, he did. And most recently... So why isn't that... Did he then make any representation about whether that psychiatric treatment related to symptoms that there were on whether he was disabled? It was on the disability form. It's on a disability form. So one could assume that it does relate to that. But that doesn't suggest that that's exactly where the ALJ is supposed to step in in the performance inquisitorial function. Yes, Your Honor, but in just in terms of... I don't understand what's so problematic about the argument that the claimant's making here. Well, in terms of the problem of the argument here is just because in terms of the case law, we're looking at whether there's a gap in the record. And in this particular case, and in this case, Mr. Torres-Baghan was at the hearing, and the ALJ asked him in terms of unquestioning about his symptoms as well. On page 44 of the transcript is where there's a discussion about his anxiety, about his treatment, and Mr. Torres-Baghan admitted that his treatment was effective, that he was feeling better. So in this case, there was no indication that there was a gap. The ALJ could properly rely on testimony. So here we did have a missing piece here, in addition to the assertion that I'm receiving treatment. I'm receiving treatment from Valley Psychiatric. And there's even a question about the intensity of the treatment, because it even is in notation, I believe, in June of 2014, he noted he was receiving... In talking about treatment since the prior March, he'd only received treatment once. So that's not a... So in terms of the intensity of the treatment isn't there, and also with respect to the... At the hearing itself, again, Mr. Torres-Baghan noted that the symptoms seemed to be more under control. He was given the opportunity as well to go off the record, review the consultative examination report. To review the examination, he took 5 or 10 minutes with his mother to review the report. Dr. Mars de Jesus indicated that his reading level was average. His IQ had increased. So for all those reasons, there was not a gap in the record. Isn't the rule of the circuit where the claimant is unrepresented and is mentally impaired, there's a higher duty on the part of the ALJ to inquire and to develop the record? Yes, Your Honor. How was that met in this case? In this case it's met because, first of all, the facts of the case are different in that... Was he unrepresented? He was unrepresented. He was mentally impaired. He was found to have a learning disability. Well, is that mental impairments or is that something else? It's a form of mental impairment. So it meets both those requirements. Yes. Can you tell me specifically what the ALJ, the administrative judge did to supplement the record to meet those two problems? Yes, Your Honor. What the ALJ did do is the ALJ did afford the claimant, Mr. Torres-Pagani, consultative examination. That was done in connection with the case as well as a state agency expert reviewed the case as well. Dr. Perlman reviewed the record to determine whether or not Mr. Torres-Pagani was disabled. There was a... And the sections of the record for that, Dr. Perlman's record is at 188 to 204 and Dr. Mora de Jesus is at 183 to 186. And, again, this shows... Also involves IQ testing as well on the part... The problem is just that in addition to... We've got a claimant who is unrepresented, has a learning disability. One way to handle that is, OK, your case doesn't look that strong, but we should give you a chance to have a consultation, etc. We've got an additional feature here, which is that unrepresented claimant with a learning disability is also saying on the disability form, I've also been treated for the various psychiatric ailments, and you can find them at X place. Why, in that circumstance, is just providing the consultative review enough? Why doesn't the object also have the duty to then consider those records and consider them in light of the consultative report? Yes, Ron. Well, in that case, you look at the facts of the case and you look at whether there are any evidentiary gaps in the record. And in that case... Well, how would the gap be the identification by the claimant of psychiatric problems that are being treated? And the gap in the record is the evidence that builds on that, though available, is not considered. Right. Well, again, that evidence that was... Again, in this case, there was no... We had, in addition to that, we had testimony that the symptoms had been under... you know, that had been alleviated, as well as the mere fact that individuals receiving treatment for a condition doesn't mean that the individual is disabled. But alternatively, even if there was an error, even if the ALJ did err in the development of the record, Mr. Torres-Bagana has not demonstrated prejudice under Shinseki v. Sanders' Supreme Court case that deals with the fact that the claimant... In this case, now, this was Mr. Torres-Bagana, represented by counsel, had an obligation to demonstrate prejudice. And he has not done that in this case. As was noted earlier, there is a mechanism... In Shinseki, did they require a proffer? In Shinseki, there was... I do not recall whether or not there was a proffer at the court. You're saying there has to be a proffer to show prejudice. So is that the law? Well, in terms of the... I'm not certain, Your Honor, whether or not a proffer is called... What can he do to show prejudice? If he doesn't have to do a proffer, what has he failed to do that he needed to do to show prejudice? Because he's saying, what I show the prejudice is, I identified symptoms that I have that were being treated, and there are records of those treatments, and they made a decision that I'm not disabled without looking at it. That's prejudice. Yes. And in this case, Your Honor, I want to just make sure to clarify my position that a proffer... That claimant should have made a proffer in this case. That there was a requirement for a proffer in under section 6. What's the case that tells us that you have to do a proffer to show prejudice? Your Honor, I don't have a case for that. Does it exist? Pardon? Does the case exist? Your Honor, I'm not aware if a case exists. We can assume that that's a better requirement. Pardon? We can assume that if there is no case, and there's no regulation that requires it, it is not a requirement. Yes, Your Honor. Thank you. But the fact also that this case does involve existing records as well, there's a heightened level... I think this is what we're arguing about, existing records, isn't it? But this is where the claimant was shown an even greater showing of harm. For example, the Tenth Circuit in Hawkins v. Chader discussed a situation where a failure to obtain a consultative examination. That's a situation where it's much more of a... where it's much more likely you heard of harm. Mr. Judge, let me ask you a question. Yes, Your Honor. This was a redetermination of eligibility... Yes, Your Honor. ...as it turned 18. Yes. Would the ALJ have been aware of the findings that caused him to be declared disabled in the first place? The ALJ would have... Yes, the ALJ did, because actually in the ALJ's decision, they made a note that the ALJ... that the plaintiff had been found to meet a listing and actually referenced his IQ score at the time. His IQ score was 64, which takes him within that range. Did he have a psychiatric condition at the time of his initial eligibility determination, when he was a child? It is not... It's not present in the record as we have it. There does seem to be, just in terms of looking... In order to meet that listing, you need to have another disability. Is low IQ the only finding of eligibility from his juvenile status? A low IQ would be required to... May I answer the question? Absolutely. Yes, a low IQ would be... is a requirement to meet the listing. It's my understanding that in addition, there was an additional disability, I believe an affective disorder. There is a requirement that there be an additional condition in order to meet the listing. All right, so is affective disorder a psychiatric condition? Yes, Your Honor. So then the ALJ was on notice that he did, in fact, have an ongoing psychiatric problem. Yes, Your Honor, but the thing is, for a redetermination, one begins with the initial, you know, it's the step five determination without any deference afforded to the prior decision. So one looks at the decision as if a clean slate, as if someone has not been previously found disabled. I'm not saying deference, but I'm talking about notice. What notice did he have in addition to the listings? Not without the claimant as to what his ailments were. Well, he would have had access to the prior file, I would imagine. So... You can see, though, that if he had developed a disability in consequence of a psychiatric condition in the months running up to the hearing, the ALJ was obliged to inquire into that if he was on notice of it. Not necessarily, Your Honor, because just the mere fact that he has a diagnosis of a psychiatric condition? If the claimant was predicating the disability claim on that psychiatric condition... Yes. ...then the ALJ would be required to consider it. That's not predicated in this case, but I would say, yes, there would be an obligation to... There would seem to be a heightened obligation as that court's decision in courier. And I just wanted to note as well, just finally, that with respect to the... In his reply brief, he did note... Mr. Trelepin and I did note some additional cases with respect to this issue. Those cases all involve cases in which there was additional... The records were already of record. We don't have any proper... any evidence of record in this case.  Thank you, counsel. Yes, sir. Regarding Proffert? Regarding Proffert? Regarding Proffert. You want it from both parties or just the other way? Both parties. Yes, sir. 28-J, whether... Would you repeat it, please? I mean, the issue is whether, in order to establish prejudice, we had to have made a proper testing. What evidence was available in the medical... He's missing medical records. That's what we're trying to figure out. Or if it's enough that there is some record evidence that he was being treated for the condition. Yeah. I'm just trying to figure if we need to know more information in order to establish prejudice about what treatment he was undergoing. Just to make something clear, I thought the government had conceded that point. Do we still need a letter? I conceded it. I would find a letter helpful. I'm glad you helped. They can concede it again. Thank you. May I address a point? Is it fair if I just... I'm not aware of any new cases, but may I just have an opportunity to respond in the event that you find such a alleged case, rather than for me to have to go out there? Yes, you have ten days. You have five days. Thank you, Your Honor. Thank you. We take a five-minute break.